IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN HOPKINS, *et al.*, | ) | CASE NO.: 1:11 CV 2558 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KEVIN M. CHARTRAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Parties Cross Motions for summary judgment. (ECF #20 and #22). For the reasons that follow, Defendants' Motion for Summary Judgment (ECF #20) is granted in part and denied in part and Plaintiffs' Motion (ECF #22) is denied.

## FACTS

Plaintiffs John Hopkins and Greg Boyles filed this action against Defendant Kevin M. Chartrand, former Geauga County Coroner[1], in both his official and individual capacity, on November 23, 2011. The claims asserted by Plaintiffs arise from their lay offs in February, 2011 after their jobs as investigators for the Geauga County Coroner were abolished. The Complaint asserts five claims: Count One- Breach of Contract; Count Two- Family and Medical Leave Act ("FMLA") Interference; Count Three- FMLA Retaliation; Count Four- Overtime Violations Under the Fair Labor Standards Act ("FLSA") and Ohio Law; and, Wrongful Termination in Violation of Public Policy (Greeley Claim).

Plaintiff John Hopkins was hired by the Geauga County Coroner's Office in October,

---

[1] Dr. Chartrand was the elected Geauga County Coroner at the time that this Complaint was filed. His term expired in January, 2013 and he elected not to run for another term.

1999 as an Investigator Clerk. (Hopkins Dep. at 6) Mr. Hopkins described his job duties at that point as being responsible for responding to death calls, processing the scene, interviewing family members or witnesses, taking responsibility for the bodies, photography, collecting evidence and documenting everything in a report. Clerical aspects of his job included preparing financials, paying the Office's bills, dealing with venders and putting together yearly budgets for the Coroner to review, keeping statistics and entering data. (Id. at 7) As Chief Investigator, Mr. Hopkins was also responsible for supervising the activities of six other investigators, would review the work product of the other investigators, supervise training for new employees and sign off on various work records. (Hopkins Dep. at 15-16)

Mr. Hopkins was paid a salary payable in 26 or 27 equal installments, except for one paycheck, generally in December, when he would receive a longevity bonus based upon his years of employment with the County. (Id. at 8) Mr. Hopkins signed an acknowledgment of receiving a copy of the Geauga County Personnel Policy and Procedure Manual which included the statement that the Manual was not a contract of employment and did not create any binding legal obligations on the part of the County to Mr. Hopkins. The acknowledgment further states that no representative of the County, other than the Board of Commissioners, has any authority to enter into any agreement for any specified period of time, and that any such agreement must be in writing and properly authorized and signed by the Board to be valid. (ECF #20, Ex. 4)

Nevertheless, on January 1, 2004, Mr. Hopkins signed an employment contract with former Geauga County Coroner, Albert S. Evans, D.O., for the position of Chief Investigator/Clerk. that purported to have a minimum term of six years unless terminated for cause. (See ECF #20, Ex.6) The employment contract was not signed by the Board of

Commissioners.

Plaintiff Gregg W. Boyles was hired by Geauga County Coroner's Office on September 17, 2004 as a part-time investigator. (Boyles Dep. at 7) Mr. Boyles signed an acknowledgment of receipt of the Geauga County Coroner's Office Personnel Policy & Procedure Manuel. (ECF #20, Ex.5) That acknowledgment provides that the Manual is not a contract and that no representative of the County, other than the Board of Commissioners, has the authority to enter into any agreement for any specified period of time or make any promises upon which he could rely, and that any such agreement must be in writing and properly authorized and signed by the Board of Commissioners to be valid. *Id.*

Mr. Boyles became a full time investigator for the Coroner's Office in 2006. Like Mr. Hopkins, he signed an employment contract with former Coroner Evans, which purports to establish a minimum term of employment from January 30, 2006 through December 31, 2009, unless the employee is terminated for cause. (ECF #20, Ex.7) The employment contract was not signed by the Board of County Commissioners and Mr. Boyles acknowledged that he never had a contract with the Board of Commissioners. (Boyles Dep. at 9)

Mr. Boyles duties were similar to those of the only other full time investigator, Mr. Hopkins. Both were responsible for the security of the office and Mr. Boyles was responsible for the evidence room. (Boyles Dep. At 14). They both handled death calls, photographed death scenes, collected evidence and dealt with family members. Both men obtained specialized training and helped train the part time investigators. Like Mr. Hopkins, Mr. Boyles was paid an annual salary and was paid the same amounts in his bi-weekly paychecks. (Boyles Dep. at 23) Whether or not they worked, the full-time investigators got paid for 80 hours each pay period

and received 4.6 hours of sick leave per pay period. (Boyles Dep. at 28-29, 45) One of the two Plaintiffs was required to be on call at all times.  (Boyles Dep. at 19) They worked in the office during regular business hours, but when a death occurred in the County during non-regular hours, one of the Plaintiffs was required to go to the scene, conduct an investigation, and put together the appropriate paperwork. (Id. at 18-26) These duties regularly required them to work in excess of 40 hours per week. (Hopkins Dep. at 53; Boyles Dep. at 22) Dr. Chartrand states that Plaintiffs did not have set hours, nor was there an expectation as to hours worked in a given week, although salaried employees would generally work 40 hours per week. (Chartrand Dep. at 11-12)

Defendant Kevin Chartrand is a medical doctor who was appointed Geauga County Coroner in August, 2006. (Chartrand Dep. at 7)   Thereafter, he ran for election and won in the next general election. Id. When he was first appointed Coroner, Mr. Hopkins gave him a contract addendum to the Plaintiffs' contracts with the former coroner which Dr. Chartrand signed. ( Id. at 25.)  The Addendum signed by Defendant in his capacity as Coroner, states that he agrees to continue to honor the conditions and terms of the existing employment contracts pertaining to the current full time Investigators (Plaintiffs) until such time that the contracts can be re-negotiated.

Mr. Hopkins states that he wanted to take some FMLA leave in the fall of 2009 because of stress he was feeling.  Mr. Boyles mentioned to Dr. Chartrand that Mr. Hopkins may want to take FMLA leave.  Dr. Chartrand allegedly responded that Mr. Hopkins would be fired if he submitted FMLA leave.  Mr. Hopkins did not request FMLA leave. Mr. Boyles later memorialized his conversation with Dr. Chartrand regarding Mr. Hopkin's potential FMLA

leave. Dr. Chartrand states that neither Plaintiff ever gave him any information regarding a serious medical condition that would lead him to believe that either Plaintiff was inquiring about or asking for FMLA leave. Further, neither Plaintiff ever submitted a FMLA leave request form. (Chartrand Dep. ¶¶10-12).

County revenue declined in 2007, 2008 and 2009. (Aff. of County Commissioner Mary Samide, ¶4) In the fall of 2010, as the economic downturn continued, Dr. Chartrand was informed by Commissioner Samide and County Administrator David Lair that it was anticipated that the County would face potential shortfalls and a suggestion was made to defund the investigators positions. (Chartrand Dep. at 19) On February 9, 2011, Dr. Chartrand notified all of the Investigators by letters, including Plaintiffs, that due to reasons of economy, including a permanent defunding of the budget by the Geauga Board of County Commissions, their jobs were being abolished and they were to be laid off effective February 28, 2011. (ECF #22, Exs. 1 and 2)

Both Plaintiffs filed appeals with the State Personnel Board of Review (SPBR). An Administrative Law Judge ("ALJ") heard the appeals and recommended that both appeals be dismissed as both investigators were determined to be unclassified service employees under state law.[2] (ECF #20, Ex.1) The SPBR affirmed the ALJ's Report and Recommendation and dismissed the appeals. No further appeal of the SPBR decisions were taken by either Plaintiff.

Plaintiffs also filed a mandamus action in the Eleventh District Court of Appeals in Geauga County, asserting that they were classified employees entitled to reinstatement of

---

[2]If the Board determines that Plaintiffs were unclassified employees at the time of their job abolishment, then the Board would not have jurisdiction over the job abolishment of an unclassified employee, requiring that the appeal be dismissed.

employment with the Coroner. The Court of Appeals dismissed the Action on November 12, 2012, as not being ripe for review because the SPBR had not yet made its determination about whether Plaintiffs were classified or unclassified employees. (ECF #20, Ex. 7)

Plaintiffs filed the pending action on November 23, 2011 alleging violations of the FMLA and FLSA, as well as pendent state claims of breach of contract and public policy or "Greeley" claims. Defendant Chartrand has moved for summary judgment on all claims. Plaintiffs have moved for summary judgment on their FLSA and breach of contract claims. The motions are fully briefed and ready for decision.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

6

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

7

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Fed. R. Civ. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

8

that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

Moving first to Plaintiffs' federal claims, Plaintiffs allege claims of FMLA Interference (Count Two) and FMLA Retaliation (Count Three) as well as Overtime Violations Under FLSA (Count Four).

**A. FSLA Claim**

Both Plaintiffs and Defendant move for summary judgment on Plaintiffs' claim of breach of the Fair Labor Standards Act. (Count 4) Plaintiffs assert that Defendant violated the Fair Labor Standards Act by failing to pay Plaintiffs overtime compensation.

Section 7(a) of the FLSA requires an employer to compensate an employee who works over forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Section 13(a) of the FLSA, however, entirely exempts from the overtime pay requirement any employee who is employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)(1). This exemption is to be "narrowly construed against the employers seeking to assert [it]." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Michigan Ass'n of Governmental Employees v. Michigan Dep't of Corrections*, 992 F.2d 82, 83 (6th Cir.1993). Application of the exemption is limited to those circumstances plainly and unmistakably within the exemption's

terms and spirit and the employer bears the burden of proving that the exemption applies to the employee in question. *Douglas v. Argo–Tech Corporation*, 113 F.3d 67, 70 (6th Cir. 1997) (citations omitted.)

Defendant contends that Plaintiffs are exempt from FSLA overtime provisions because both are employed in a bona fide administrative capacity. Congress did not define the phrase "bona fide administrative capacity" in the FLSA, choosing instead to delegate that responsibility to the Secretary of Labor. *Douglas*, 113 F.3d at 70 (citations omitted.)  Under the FLSA's implementing regulations, an employer may prove that an employee is an exempt "administrative employee" by demonstrating that: (1) the employee is "compensated on a salary or fee basis at a rate of not less than $455 per week"; (2) the employee's "primary duty consists of ... [t]he performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers"; and (3) the employee's primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §§ 541.2 (a)(1)-(3).  The parties agree that Plaintiffs were paid on a salary basis and that the first element of the test has been satisfied.  In addition, there is no real dispute that the Plaintiffs exercised discretion and independent judgment in their duties.  The only dispute is whether Plaintiffs' primary duties consisted of office or non-manual work directly related to management polices or general business operations of the Coroner.

The regulations offer further examples to help define the "directly related to management or general business operations" element of the administrative exemption as follows:

> The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee.  To meet this requirement, an employee must perform

10

>work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
>Work directly related to management or general business operations includes, but is not limited to , work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network; internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

29 C.F.R. § 541.201(a)-(b). Plaintiffs contend that their duties for the Coroner's office are more analogous to working on a production line rather than in assisting with the running or servicing of the business because most of the tasks that they perform are part of the duties and responsibilities of the coroner's office as established by statute as opposed to general management of the office. While Plaintiffs clearly assisted in performing some of the main duties of the Coroner's office as defined by Ohio law–official custodian of the morgue, identification of bodies and remains of deceased persons; maintaining records of investigations and determining cause of death; conducting autopsies; notifying relatives and disposing of decedent's property; determining cause of death; and, testing bodies for toxic substances or for law enforcement purposes, the main focus of the Court's analysis must be on the type of work actually performed by the Plaintiffs on a daily basis.

The parties agree that plaintiffs job responsibilities as investigators included conducting investigations on behalf of the Coroner which encompassed responding to various scenes in the County, interviewing individuals and families pertaining to the death, collecting evidence, taking

photos, interacting with the Coroner, doing some book work, paperwork, creating records, as well as general clerical and office work required by the job. These duties are very similar to the types of work that the Department of Labor used as an example of exempt positions. Specifically, the regulations note that insurance claims adjusters generally meet the duties requirements for the administrative exemptions "if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation." 29 C.F.R. §541.203(a).

Here, Plaintiffs interview witnesses, families, inspect the scenes, collect evidence, help the Coroner decide if the deaths are suspicious, collaborate on cause of death as well as being responsible other more administrative tasks such as maintaining the evidence room, paying bills for the office, training and other paperwork. When combined with the fact that Plaintiffs are paid on a salary basis and exercise discretion and independent judgment with respect to matters of significance, the Court finds that Plaintiffs, like insurance claims adjustors, meet the requirements for the administrative exemption. As such, Defendant is entitled to summary judgment on Plaintiffs' FSLA claim (Count Four).[3]

**B. FMLA Claims**

In their Complaint, Plaintiffs assert both an FMLA interference and an FMLA retaliation claim. However, in response to Defendants' motion for summary judgment on these claims,

---

[3]Having determined that both Plaintiffs are exempt under the Administrative exemption, it is unnecessary to decide if Mr. Hopkins is also covered by the Executive exemption.

Plaintiffs eschew any analysis of the interference claim and asks this Court to apply the *McDonnell Douglas* burden shifting approach to Plaintiffs' claims for retaliation in violation of the FMLA. (ECF 325 at 16).[4] The Family Medical Leave Act entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination, when the leave is taken for, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1). A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves-(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

There are two recovery theories available under the FMLA: the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2). *Wysong V. Dow Chemical Company*, 503 F.3d 441, 446 (6th Cir. 2007).

Specifically, the FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under th[e] [FMLA]." 29 U.S.C. § 2615(a)(1). To prevail under the interference theory, the employee must establish the following by a preponderance of the evidence:

(1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2);

(2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4);

---

[4]This makes some sense in that Plaintiffs' main injury in this action is the loss of their jobs which is the adverse action asserted under the retaliation claim, not the missing of an opportunity to take unpaid leave that would have been forfeited under an interference claim. In any event, Mr. Boyle clearly does not have an interference claim as he never requested FMLA for himself and his only "protected activity" was memorializing his conversation with Dr. Chartrand regarding Mr. Hopkin's desire to take FMLA leave.

(3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1);

(4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and

(5) the employer denied the employee FMLA benefits to which he was entitled.

Wysong, 503 F.3d at 447; citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir.2003).

The *McDonnell Douglas* burden shifting has traditionally applied to FMLA retaliation claims but has also been applied to FMLA interference claims as well. *Donald v. Sybra, Inc*., 667 F.3d 757, 762 (6th Cir. 2012). As the parties to this action agree that the *McDonnell Douglas* burden shifting analysis should apply to Plaintiffs' FMLA claims using the retaliation theory, the Court will comply.

To establish a prima facie case of retaliation under the FMLA, Plaintiffs must show that: (1) they were engaged in a statutorily protected activity; (2) Defendant knew that they were exercising their FMLA rights; (3) they suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Donald*, 667 F.3d at 761. "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir.2007).

If Plaintiffs establish the prima facie case, the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for the adverse action. If the employer articulates a

14

legitimate, nondiscriminatory reason for taking the adverse action, the presumption of discrimination raised by Plaintiffs' establishment of the prima facie case is rebutted.  At that point the burden shifts back to Plaintiffs to produce adequate evidence demonstrating that the employer's proffered reason was a pretext for discrimination. *Bryson v. Regis Corp.*, 498 F.3d 561, 570. (6th Cir. 2007).  "[A] reason cannot ... be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphases and quotation marks omitted).   A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000). *"*Whichever method the plaintiff employs, he always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [ ] intentionally discriminated against him.*" Seeger v. Cincinnati Bell Telephone Co.*, 681 F.3d 274, 285(6th Cir. 2012)(citations omitted).

    Here, Plaintiffs assert that Mr. Hopkin's request for FMLA leave and Mr. Boyle's documentation of Dr. Chartrand's "enraged response", constitutes protected activity.  It appears that Mr. Hopkins never actually submitted a request for FMLA leave after hearing about Dr. Chartrand's response to Mr. Boyle's suggestion that Mr. Hopkins may want to take FMLA leave.  It does not appear that Mr. Boyle ever wanted or requested FMLA leave for himself.  His protected activity was writing a summary of Dr. Chartrand's alleged response to Mr. Boyle's suggestion that Mr. Hopkins may want to take FMLA leave. There is no evidence in the record before the Court to suggest that either Plaintiff, or any family member, had a "serious health

15

condition" which would permit them to take FMLA leave.

Dr. Chartrand denies knowing that Plaintiffs' tried to exercise their rights under FMLA because they never gave notice that they were taking FMLA leave. Plaintiffs' skip this step of the prima facie case.

The adverse action suffered by Plaintiffs was their termination in February 2011, almost a year and a half following the Mr. Boyle's conversation with Dr. Chartrand regarding Mr. Hopkin's proposed FMLA leave.  Plaintiffs assert that they have satisfied the causation element because there is evidence that Dr. Chartrand wanted the Sheriff's department to take over Plaintiffs' duties to eliminate the administrative burden presented by Plaintiffs' requests for time off, including time under FMLA. Plaintiffs' arguments in support of their prima facie case are weak, especially regarding causation. Even if the Court stretches the limits of any interpretation of what may constitute "credible evidence," this showing is very thin.  However, for purpose of argument the Court will assume that Plaintiffs' have established a prima facie case.

Based upon the affidavits presented to the Court, Defendant has satisfied his burden to show a non-discriminatory explanation for Plaintiffs' termination by showing that Plaintiffs, along with all other Coroner Office investigators, as well as other County employees, were laid off as a result of budget cuts implemented by the Board of County Commissioners.

Plaintiffs attempt to show that Defendant's non-discriminatory reason for their terminations is a pretext for discrimination by arguing that budgetary cuts imposed by the County Commissioners "did not form a legitimate basis to terminate Plaintiffs in light of the contract that they had with the coroner." However, it is clear that budgetary reductions form a justifiable basis for an employee's termination.  *See Ercegovich v. Goodyear Tire & Rubber Co.*,

16

154 F.3d 344, 350 (6th Cir.1998)*(holding that the district court properly found no inconsistency among various reasons given by the defendant for plaintiff's termination because they all revolve around a single idea: the plaintiff's position could no longer be justified as being cost-effective)*. In addition, there is no evidence that Plaintiffs were singled out for adverse treatment. All investigators were laid off and there is no temporal connection between the exercise of any protected activity and the adverse action.

Moreover, Plaintiffs' argument that their termination may have violated a contract, even if true, does not show that the termination was actually a pretext for discrimination–that they were terminated, along with all the other investigators and other County employees– because they had inquired about FMLA leave and written a summary of Dr. Chartrand's alleged response to the inquiry–a year and a half prior to the termination. In sum, Plaintiffs have not shown that Defendant's non-discriminatory explanation for termination has no basis in fact; or did not actually motivate the action; or was insufficient to warrant the action. As such, plaintiffs failed to meet the burden of producing sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against them because of their FMLA protected activity. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' FMLA claims.

**C. State Law Claims**

As Plaintiffs' FSLA and FMLA claims were the only claims in this matter over which this Court had original jurisdiction, the Court exercises its discretion, pursuant to 28 U.S.C. §1367(c)(3), to decline to retain supplemental jurisdiction over the remaining state law claims against the Defendant in this case and those claims will be dismissed without prejudice.

17

## CONCLUSION

For the reasons set forth above, Defendants's Motion for Summary Judgment (ECF #20) is granted as to Plaintiffs' federal claims under the Fair Labor Standards Act (Count Four) and the Family Medical Leave Act (Counts Two and Three). Plaintiffs' Claims of Breach of Contract (Count One) and Wrongful Termination in Violation of Public Policy (Greeley Claim) (Count Five) are DISMISSED WITHOUT PREJUDICE.  Plaintiffs' Motion for Summary Judgment (ECF #22) is denied.

IT IS SO ORDERED.

   /s/Donald C. Nugent
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED:__July 17, 2013___